Howard I.S. HO, Plaintiff–Appellant,

v.

**MARTIN MARIETTA CORPORATION, Defendant–Appellee.**

No. 87–3883
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 20, 1988.

1. *Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 541 (5th Cir.1987); *Jackson v. Johns–Manville* *Sales Corp.*, 781 F.2d 394, 398 (5th Cir.1986).

Joseph G. Albe, New Orleans, La., for plaintiff-appellant.

Barbara Ryniker Evans, Kimberly Wooten, New Orleans, La., for Martin Marietta & Golla.

Before RUBIN, REAVLEY and SMITH, Circuit Judges.

JERRY EDWIN SMITH, Circuit Judge:

This case regards the enforcement of a settlement of a federal cause of action brought in federal court. Plaintiff, Howard Ho, settled a job discrimination suit which he originally brought against defendant, Martin Marietta Corporation ("Marietta"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and under 42 U.S.C. § 1981. Five months after settling with Marietta, Ho filed a worker's compensation claim in Louisiana. Marietta moved for summary judgment in the court below to enforce the agreement and judgment that had settled Ho's claims with Marietta, and Ho countered by filing his own motion for partial summary judgment. The federal magistrate who had entered judgment on the original settlement ruled in Marietta's favor on both motions. We now affirm.

I.

After extensive negotiation with Marietta, Ho agreed in May 1987 to settle a Title VII action for job discrimination which he had brought against Marietta. In that settlement agreement, Ho agreed to waive "all actions, claims or lawsuits whatsoever, which [Ho] ... [had] or might have in the future against Martin Marietta Corporation ... as a result of any common law, federal or state contract or tort claim or cause of action ... and/or ... as a result of [Ho's] employment by and termination of employment from Martin Marietta Corporation."

Ho appeared in federal court to finalize the settlement and to have it entered as a judgment in his Title VII action. In open court, Ho engaged in the following colloquy with the magistrate:

THE COURT: Okay. You understand, sir, that in signing these documents that you have no further claims against Martin Marietta ... as a result of the matters you brought the lawsuit on; you understand that?

MR. HO: I understand.

THE COURT: Okay. And that no matter what happens, whether you ultimately feel that you need more money or not, you have no right to go against [Marietta] and ask [it] for one more thing. You understand that?

MR. HO: I understand that.

In spite of the precise terms of the settlement and the warnings of the court, Ho filed a worker's compensation claim clearly covered by the settlement and based upon the same facts upon which he had filed his Title VII action. Marietta filed a motion to reopen the Title VII action and to grant it summary judgment to enforce the agreement and judgment. Ho, arguing that the federal courts did not have jurisdiction to accept a settlement of a worker's compensation claim, filed a motion for partial summary judgment. The magistrate who had entered judgment on the original settlement granted Marietta's motion and denied Ho's.

The magistrate gave Ho the alternative of either dropping his worker's compensation claim within one week, or returning the $200,000 he received for settling his Title VII action with Martin Marietta whereupon the Title VII action would be reopened for trial. The magistrate also imposed attorneys' fees on Ho for the summary judgment proceedings, and has ordered that Ho pay attorneys' fees should the Title VII action be tried and should Ho lose at trial.[1] Ho appeals both the failure to grant him partial summary judgment and the imposition of sanctions.

## II.

Ho does not dispute either that he entered into the original settlement or that the settlement (on its face, at least) covers his worker's compensation claim. Ho argues, instead, that the settlement does not legally encompass his worker's compensation claims because (1) the district court did not have jurisdiction to entertain a worker's compensation claim, and therefore did not have the jurisdiction to enter a judgment that would affect such a claim, and (2) Louisiana law allows courts to accept settlements in worker's compensation cases only when the courts follow specified procedures which the district court concededly did not follow here.

■ Ho's attack on the judicial consent decree, however, is fatally flawed by his misunderstanding of the nature of such decrees. Ho treats them as though they were only final judgments, subject to the same constraints of jurisdiction and the same rules of collateral attack. In fact, judicial consent decrees are not only final judgments on the merits, but also settlements to which adversarial parties have consented. *See United States v. City of Miami,* 664 F.2d 435, 440 (5th Cir.1981) (en banc) (Rubin, J., concurring); *High v. Braniff Airways,* 592 F.2d 1330 (5th Cir. 1979). Thus, when we test the validity of consent decrees that affect only the rights of the parties before the court, we are mindful of the principles not only regarding the validity of judgments but also regarding the validity of contracts.[2] *See City of Miami,* 664 F.2d at 440 (Rubin, J., concurring); *United States v. ITT Continental Bakery Co.,* 420 U.S. 223, 236–37 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1975).

■ The district court, which Ho claims has no jurisdiction over the worker's compensation portion of the settlement, obtained jurisdiction of this case when Ho

---

1. On the record, the magistrate said of Ho's worker's compensation claim, "I cannot help but comment that this is one of the greediest things that has come across my desk in the entire three years that I have been a magistrate."

2. We note in passing that public policy strongly encourages the settlement of cases. Consequently, we prefer upholding settlements rather than overturning them. *See, e.g., Bass v. Phoenix Seadrill/78,* 749 F.2d 1154 (5th Cir.1985) (personal injury suit).

filed his Title VII action. The district court then properly encouraged both sides to settle the case and actively assisted the parties in reaching an acceptable agreement.[3] The parties themselves; however, reached a settlement on their own that was mutually acceptable. As with most settlements between two private parties, the settlement in this case took the form of a contract. Under familiar contract principles, the parties were free to agree to any terms, not opposed to public policy, that would settle the Title VII claims.[4] The parties chose to bargain over existing and future state and federal claims. Nothing prevented Marietta from insisting that Ho relinquish his state claims as well as his federal claims to settle the suit, and nothing prevented Ho from accepting money to extinguish his state claims as part of an agreement to settle federal claims involving the same facts and issues. *Schott Enterprises, Inc. v. Pepsico, Inc.*, 520 F.2d 1298, 1300 (6th Cir.1975) ("The parties had a right to settle whatever claims either had against the other....").

■ An agreement, or contract, to settle a case does not deprive the district court of jurisdiction merely because some of the settlement terms compromise legal claims over which the court has no jurisdiction.[5] The district court has jurisdiction over the settlement because the settlement is the final adjudication between the parties of the claims involved in the suit. *White Farm Equipment Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir.1986) ("Federal courts have the inherent power to enforce settlement agreements entered into by the parties litigant in a pending case...."). Because this settlement ended a Title VII suit over which the district court undeniably had jurisdiction, the district court similarly has jurisdiction over both the settlement and the enforcement of the consent decree. *Id.* *See also City of Miami*, 664 F.2d at 440 (Rubin, J., concurring) ("As a judgment, [the judicial decree] may be enforced by judicial sanctions.").

■ Once the district court enters the settlement as a judicial consent decree ending the lawsuit, the settlement takes on the nature of a judgment. The judicial decree, which gives the settlement its legal force, cannot be collaterally attacked or altered. *Thaggard v. City of Jackson*, 687 F.2d at 68. It "is a final determination and res judicata of the merits...." 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.409[5] at 326 (2d ed. 1984). Federal

---

3. The district court's involvement in the settlement negotiations is especially proper in this case, since the federal policy in favor of settling Title VII cases is particularly strong. *See Thaggard v. City of Jackson*, 687 F.2d 66 (5th Cir. 1982), *cert. denied sub nom. Ashley v. City of Jackson*, 464 U.S. 900, 104 S.Ct. 255, 78 L.Ed.2d 241 (1983).

Ho seems especially disturbed that the district court did not follow certain procedures Louisiana requires its courts to follow before allowing a worker's compensation plaintiff to settle his claims. Ho forgets, however, that he was not settling a worker's compensation claim in Louisiana state court, but a Title VII claim in federal court. Federal courts have the right to apply their own procedural rules to dispose of federal claims. The fact that this settlement also effectively settled Ho's worker's compensation rights, relating to his employment with Marietta, is irrelevant.

4. Of course, the district court may refuse to enter a judicially enforceable consent decree embodying the settlement. A court is a judicial body, not a recorder of contracts. *City of Miami*, 664 F.2d at 441 (Rubin, J., concurring). Nonetheless, a district court shall approve a settlement between two private parties if the settlement does not affect third parties, is "fair, adequate, and reasonable," and does not violate the Constitution, any statute, or jurisprudence. *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977)). In this case, the settlement, which did not violate the law, was more than fair, adequate, and reasonable to Mr. Ho.

5. *Swift & Co. v. United States*, 276 U.S. 311, 330–31, 48 S.Ct. 311, 316, 72 L.Ed. 587 (1928) (federal court had jurisdiction to enjoin even *intrastate* commerce where (1) court issued injunction pursuant to parties' settlement of case and (2) case was subject to court's jurisdiction because pleadings alleged antitrust conspiracy to obstruct interstate commerce). *Cf. Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 561, 88 S.Ct. 1235, 1238, 20 L.Ed.2d 126 (1968), (*quoting Swift & Co.*, 276 U.S. at 331, 48 S.Ct. at 316, for the proposition that a federal court's power to grant relief extends beyond its power of jurisdiction); *Local No. 93 Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986) (*citing Swift & Co.* for the same proposition).

courts, of course, may issue injunctions to prohibit the parties from relitigating claims settled by the consent decree, just as they may protect the finality of any of their judgments. 28 U.S.C. § 2283. *See* Moore's Federal Practice, *supra,* ¶ 0.208[3]; *see also id.* ¶ 0.408[3], ¶ 0.408[2].[6] Consequently, the district court's decision to discourage Ho's worker's compensation claim was not a novel attempt to usurp the exclusive jurisdiction of a state court system over a state claim, but rather a common exercise of a federal court's right to protect its own final judgments.

### III.

Finally, Ho also appeals the magistrate's decision to impose attorneys' fees on Ho for the summary judgment proceedings. Ho complains that the magistrate could impose attorneys' fees only under Fed.R. Civ.P. 11, which Ho argues requires the magistrate to find that Ho did not have a subjective good-faith belief in the merits of his argument. *Contra, Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 873 (5th Cir.1988) (en banc) ("An attorney's good faith is no longer enough to protect him from rule 11 sanctions" (quoting *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir.1987).).

■ We vacate the district court's award of attorneys' fees, but for reasons not cited in Ho's brief. Under *Thomas,* the district court must support Rule 11 sanctions with specific findings of fact and conclusions of law *if* the reasons for which the district court imposed Rule 11 sanctions are not clearly discernible. 836 F.2d at 883. Here, the district court did not indicate whether it was imposing Rule 11 sanctions or invoking its civil contempt powers, although both parties appear to assume that Rule 11 was the basis for the sanctions. The district court also failed to explain whether it was sanctioning Ho for filing suit in state court, defending himself against Marietta's motion for summary judgment, or filing his own cross-motion for summary judgment. On remand, the district court should review its sanctions and clarify its reasons for imposing sanctions should it decide to reinstate its order.[7]

In *Thomas,* this court sitting en banc recently enunciated appropriate procedures and standards for the imposition of sanctions under Rule 11. These *Thomas* guidelines are aptly summarized in the even more recent panel opinion in *Foval v. First National Bank of Commerce,* 841 F.2d 126, 130 (5th Cir.1988):

First, we will review Rule 11 issues under an abuse of discretion standard. [*Thomas,* 836 F.2d] at 871–73. Second, Rule 11 imposes certain obligations on litigants and their counsel. *Id.* at 873–76. Third, a district court must impose sanctions once it finds a Rule 11 violation. The court retains broad discretion in determining the "appropriate" sanction, however, and any reimbursed expenses must be found to have been caused by the Rule 11 violation and must be "reasonable." *Id.* at 876–79. Fourth, a party seeking sanctions must promptly notify the court and the offending party of its belief that a Rule 11 violation exists. *Id.* at 879–81. Fifth, a district court need not support its Rule 11 decision with specific findings of fact and conclusions of law in all cases. If, however, the justification underlying the decision is not readily apparent from the

---

6. We recognize, of course, that federal courts, including this court, are reticent to issue injunctions impairing the jurisdiction of state courts. Our own cases indicate that we shall not issue an injunction that effectively impairs the jurisdiction of a state court to hear a claim unless the aggrieved party makes a strong and unequivocal showing of relitigation of the same issue. *See, e.g., Southern California Petroleum Corp. v. Harper,* 273 F.2d 715 (5th Cir.1960). *See also Regional Properties v. Financial & Real Estate Consulting Co.,* 678 F.2d 552, 566 (5th Cir.1982) (*citing Southern California Petrole-*

*um* ). It would be difficult, however, to find an aggrieved party who could argue more strongly than Marietta that the issues in the new state suit were identical to the issues settled in the Title VII suit here, or to find a party more prejudiced by the reopening of a settled suit.

7. We note that the specific act for which an attorney or a party is sanctioned can affect the propriety of the sanction. *See Foval v. First Nat. Bk. of Commerce,* 841 F.2d 126, 130 (5th Cir. 1988).

**550**

record, a prompt remand for such findings and conclusions will be made. *Id.* at 882–83.

*Thomas,* of course, is a case of such recent vintage that the district court imposed sanctions on Ho before we decided *Thomas.* Because the district court did not have the benefit of the views we expressed in *Thomas* to guide its decision, we believe remand is especially appropriate here. We express no opinion on the propriety of any sanctions.

Consequently, we AFFIRM the district court's decision on the merits, VACATE its decision to assess attorneys' fees against Ho, and REMAND this case for the district court to reconsider its decision in light of *Thomas* and to take other action not inconsistent with this opinion.